## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
3:13-cv-453

| | | |
|---|---|---|
| JOEL KRIEGER, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HARRIS TEETER SUPERMARKETS, INC., JOHN R. BELK, JOHN P. DERHAM CATO, THOMAS W. DICKSON, JAMES E.S. HYNES, ANNA SPANGLER NELSON, MARK S. ORDAN, BAILEY W. PATRICK, ROBERT H. SPILMAN, JR., HAROLD C. STOWE, ISAIAH TIDWELL, WILLIAM C. WARDEN, JR., THE KROGER CO., and HORNET ACQUISITION, INC.<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT FOR**<br><br>**BREACH OF FIDUCIARY DUTY**<br><br>JURY TRIAL DEMANDED |

Plaintiff, Joel Krieger (the "Plaintiff"), on behalf of himself and all others similarly situated, by his attorneys, alleges the following upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action individually and on behalf of the shareholders of Harris Teeter Supermarkets, Inc. ("Harris Teeter" or the "Company") to enjoin the acquisition of the publicly owned shares of Harris Teeter by The Kroger Co. ("Kroger") through Hornet Acquisition, Inc. ("Merger Sub"), Harris Teeter's wholly-owned subsidiary, for inadequate consideration as detailed herein (the "Proposed Transaction"). On July 8, 2013, Harris Teeter and Kroger announced that they had entered into a definitive Agreement and Plan of Merger (the

"Merger Agreement") pursuant to which Harris Teeter's shareholders will receive $49.38 in cash for each share of common stock they own. The Proposed Transaction is valued at approximately $2.5 billion and is expected to close by the end of 2013.

2.      Pursuant to the Merger Agreement, at the effective time of the merger, Merger Sub will be merged with and into Harris Teeter, with the Company surviving the merger as a wholly-owned subsidiary of Kroger. The terms of the Merger Agreement have been approved by the Board of Directors of both companies. Moreover, upon information and belief, following the close of the Proposed Transaction, the board of directors (the "Board") and key management of Harris Teeter will initially consist of the directors and officers of the surviving entity. Therefore, by virtue of their anticipated positions with the surviving entity, the Board lacks true independence to consider the Proposed Transaction.

3.      The Proposed Transaction represents inadequate consideration to Harris Teeter shareholder in light of the fact that the Company is in the middle of executing its store development program and prospects for future financial growth. Each of the Defendants, as defined herein, violated applicable law by directly breaching and/or aiding the other Defendants' breaches of fiduciary duties of care, loyalty and good faith.

4.      To further lock-up the Proposed Transaction, Defendants agreed to certain deal-protection devices that unfairly favor Kroger and discourage potential bidders from submitting a superior bid for the Company including: (i) a non-solicitation or "no-shop" provision that prohibits the Company from seeking superior bids; (ii) a "matching rights" provision allowing Kroger to match any competing bidders' Superior Proposal (as defined in the Merger Agreement) for Harris Teeter; and (iii) a termination fee of $75 million which Harris Teeter will be required to pay to Kroger if the Board chooses to pursue a Superior Proposal.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of care, loyalty and good faith.

## JURISDICTION AND VENUE

6.      Each of the Individual Defendants owes fiduciary duties of care, loyalty and good faith to Plaintiff and the other members of the Class (defined below).  They are acting in concert with one another in violating their fiduciary duties as alleged herein, and, specifically, in connection with the Proposed Transaction.

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Given that the Proposed Transaction is valued at $2.5 billion, the injunctive or compensatory relief sought herein will exceed a sum or value of $75,000.  This action is not a collusive one to confer jurisdiction on this Court.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more of the defendants, including Harris Teeter, either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint, occurred in substantial part in this District.  Finally, the Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all relevant times, a shareholder of Harris Teeter common stock.

10.     Defendant Harris Teeter is incorporated under the laws of the state of North Carolina with its principal executive offices located at 701 Crestdale Road, Matthews, North Carolina, 28105.  Harris Teeter operates a regional chain of 212 supermarkets in eight states primarily located in the southeastern & mid-Atlantic U.S. and the District of Columbia.  Harris Teeter common stock trades publically on the NYSE under the ticker symbol "HTSI."

11.     Defendant John R. Belk ("Belk") has been a member of the Company's Board since 2013.  Defendant Belk serves as a member of the Board's Audit and Corporate Governance & Nominating Committees.

12.     Defendant John P. Derham Cato ("Cato") has been a member of the Company's Board since 2002.   Defendant Cato serves as a member of the Board's Compensation Committee.

13.     Defendant Thomas W. Dickson ("Dickson") is Chairman of the Board ("Chairman") and Chief Executive Officer ("CEO") of the Company.  He has served as Chairman since 2006 and CEO since 1997.  Defendant Dickson has been a member of the Company's Board since 1997.

14.     Defendant James E.S. Hynes ("Hynes") has been a member of the Company's Board since 1983.   Defendant Hynes serves as a member of the Board's Compensation Committee.

15.     Defendant Anna Spangler Nelson ("Nelson") has been a member of the Company's Board since 1998.   Defendant Nelson serves as a member of the Board's Compensation and Corporate Governance & Nominating Committees.

16.     Defendant Mark S. Ordan ("Ordan") has been a member of the Company's Board since 2013.

4

17.     Defendant Bailey W. Patrick ("Patrick") has been a member of the Company's Board since 2003. Defendant Patrick serves as a member of the Board's Audit Committee.

18.     Defendant Robert H. Spilman, Jr., ("Spilman") has been a member of the Company's Board since 2002. Defendant Spilman is a member of the Board's Corporate Governance & Nominating Committee.

19.     Defendant Harold C. Stowe ("Stowe") has been a member of the Company's Board since 1998. Defendant Stowe serves as a member of the Board's Audit Committee.

20.     Defendant Isaiah Tidwell ("Tidwell") has been a member of the Company's Board since 1999. Defendant Tidwell serves as a member of the Board's Audit and Corporate Governance & Nominating Committees.

21.     Defendant William C. Warden, Jr., ("Warden") has been a member of the Company's Board since 2008. Defendant Warden is also a member of the Board's Compensation Committee.

22.     Defendants Belk, Cato, Dickson, Hynes, Nelson, Ordan, Patrick, Spilman, Stowe, Tidwell and Warden are collectively referred to hereinafter as the "Individual Defendants."

23.     Each of the Individual Defendants herein is sued individually, and in his or her capacity as a director of the Company, and the liability of each rises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

24.     Defendant Kroger is incorporated under the laws of the State of Ohio with its principal executive offices located at 1014 Vine Street, Cincinnati, Ohio 45202. Kroger is one of the world's largest retailers, employing 343,000 associates who serve customers in 2,419

5

supermarkets and multi-department stores in 31 states under two dozen local brand names. Kroger common stock trades on the NYSE under the ticker symbol "KR."

25.    Defendant Merger Sub is a North Carolina Corporation and wholly-owned subsidiary of Kroger.  Following the closing of the Proposed Transaction, Merger Sub will cease to exist as a separate corporate entity.

26.    Collectively, the Individual Defendants, Harris Teeter, Kroger and Merger Sub are referred to herein as the "Defendants."

<u>CLASS ACTION ALLEGATIONS</u>

27.    Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Harris Teeter common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

28.    This action is properly maintainable as a class action for the following reasons:

a.    The Class is so numerous that joinder of all members is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time and can be ascertained through appropriate discovery, as of May 8, 2013, approximately 49,463,776 shares of the Company's common stock were outstanding.  The holders of these shares are believed to be geographically dispersed throughout the United States;

b.    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

i.    Whether the Individual Defendants have breached their fiduciary duties of duties of care, loyalty and good faith with respect to

Plaintiff and the other members of the Class in connection with the Proposed Transaction;

ii.      Whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

iii.     Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

iv.     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

c.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

d.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede the ability to protect their interests; and

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

7

## A.    Background

29.    Harris Teeter, through its primary subsidiary Harris Teeter, Inc., operates a regional chain of supermarkets in eight states primarily located in the southeastern & mid-Atlantic U.S. and the District of Columbia.  Prior to November 7, 2011, the Company was also engaged in the manufacturing and distribution of industrial sewing thread through American & Efird business ("A&E"), which was subsequently spin-off from Harris Teeter.  Moreover, the Company operates 208 supermarkets located in North Carolina, Virginia, South Carolina, Maryland, Tennessee, Delaware, the District of Columbia, Florida and Georgia. These supermarkets offer a full assortment of groceries, produce, meat and seafood, delicatessen items, bakery items, wines and non-food items such as health and beauty care, general merchandise and floral.

30.    Harris Teeter was created in 1968 through the consolidation of the predecessor companies of Ruddick Investment Company (subsequently merged into Ruddick Operating Company) and A&E.  In 1969, the Company acquired Harris Teeter.  In 2012, the Company changed its name from the Ruddick Corporation to Harris Teeter.

31.    Since 2006, the Company, unlike other conventional supermarket chains, has grown in sales, EBITDA, profitability and store count.  Importantly, the Company was able to trim its capital budget by $19 million in the first quarter ("1Q") of 2013 which allowed Harris Teeter to fund ten (10) new stores, including reopening two (2) acquired Lowes Food Stores and permit the Company to remodel seven (7) additional stores.  At the end of fiscal year 2012, Harris Teeter and its subsidiaries had combined assets totaling $1,952,488,000.

**B.** **Harris Teeter's Strong Financial Growth**

32. The Company's success has also been reflected in its favorable financial results. On January 31, 2013, the Company released a press release announcing the Company's 1Q of Fiscal 2013 financial results. In the press release, the Company reported:

- Sales increased by 3.7% to $1.16 billion from $1.12 billion in the first quarter of 2012;

- Gross profit in the first quarter of fiscal 2013 increased by 2.4% to $334.7 million (28.83% of sales) from $326.8 million (29.19% of sales) in the first quarter of fiscal 2012; and

- Net earnings for the first quarter of fiscal 2013 were $22.8 million, or $0.46 per diluted share, compared to net earnings of $13.7 million, or $0.28 per diluted share, for the first quarter of fiscal 2012.

33. On February 13, 2013, as a consequence of the speculation and rumors surrounding the Company as a possible acquisition target, Harris Teeter issued a press release to shareholders announcing that it had retained J.P. Morgan Securities LLC ("J.P. Morgan") to assist it in negotiations with two private equity companies who had expressed an interest in acquiring the Company.

34. On May 2, 2013, the Company announced its second quarter ("2Q") of Fiscal 2013 financial results. The Company, in its press release, reported:

- Sales for the second quarter of fiscal 2013 ended April 2, 2013 increased by 4.3% to $1.17 billion from $1.12 billion in the second quarter of fiscal 2012;

- For the 26 weeks ended April 2, 2013, sales increased by 4.0% to $2.33 billion from $2.24 billion for the comparable period of fiscal 2012;

- Gross profit in the second quarter of fiscal 2013 increased by 4.7% to $359.6 million (30.76% of sales) from $343.6 million (30.66% of sales) in the second quarter of fiscal 2012;

- Operating profit in the second quarter of fiscal 2013 increased by 7.3% to $56.3 million (4.82% of sales) from $52.5 million (4.68% of sales) in the second quarter of fiscal 2012; and

9

- The Company reported net earnings of $32.9 million, or $0.67 per diluted share, for the second quarter of fiscal 2013.

35.     Additionally, the Company's operating performance and strong financial position have allowed the Company to continue executing its store development program expanding its retail space and increasing gross profit year over year.  Kroger is well aware of Harris Teeter's financial metrics and prospects for future growth.  Knowing that the Company is primed for strong financial growth into the future, Kroger recognized that it had an opportunity to swoop in and cash out Harris Teeter's public shareholders at a time when the Company's stock has languished due in part to the Company's lack of near term earnings visibility.

## C.     The Proposed Transaction Is Announced

36.     On July 8, 2013, Harris Teeter and Kroger jointly issued a press release announcing that they had entered into the Merger Agreement.

37.     Specifically, the press release stated, in relevant part, that:

CINCINNATI, OH and MATTHEWS, NC – July 9, 2013 – The Kroger Co. (NYSE: KR) and Harris Teeter Supermarkets, Inc. (NYSE: HTSI) today announced a definitive merger agreement under which Kroger will purchase all outstanding shares of Harris Teeter for $49.38 per share in cash.

The transaction price represents a premium of 33.7% to the Harris Teeter closing share price on January 18, 2013, the day of the first media report that Harris Teeter was evaluating strategic alternatives. The terms of the agreement were approved by the Boards of Directors of both companies.

Harris Teeter brings to Kroger an exceptional brand and complementary base of 212 stores in attractive southeastern and mid-Atlantic markets and in Washington, D.C. The stores are located primarily in high-growth markets, vacation destinations and university communities in North Carolina, Virginia, South Carolina, Maryland, Tennessee, Delaware, Florida, Georgia and the District of Columbia. Harris Teeter also operates distribution centers for grocery, frozen and perishable foods in Greensboro, NC and Indian Trail, NC and a dairy facility in High Point, NC. Harris Teeter had revenues of approximately $4.5 billion for fiscal year 2012.

"We are excited to welcome Harris Teeter to the Kroger family," said David B. Dillon, Kroger's Chairman and Chief Executive Officer. "Harris Teeter is an

exceptional company with a great brand, friendly and talented associates, and attractive store formats in vibrant markets run by a first-class management team. They share our customer-centric approach to everything we do – from store format and merchandising to innovative loyalty programs. This is a financially and strategically compelling transaction and a unique opportunity for our shareholders and associates. We look forward to bringing together the best of Kroger and Harris Teeter while continuing to operate and grow the Harris Teeter brands. Together, we can continue to deepen our connections with customers across all of our markets."

Thomas W. Dickson, Chairman of the Board and Chief Executive Officer of Harris Teeter stated, "Harris Teeter has a long track record of creating shareholder value and this merger is the culmination of those efforts over many years. We are excited about becoming part of The Kroger Co., one of the best food retailers in the U.S. while maintaining the Harris Teeter banner, our management teams, our new store growth plan, our distribution and manufacturing facilities in North Carolina as well as our headquarters in Matthews, NC. As part of Kroger, Harris Teeter will be well equipped to continue to provide our customers outstanding quality and customer service as well as excellent value in an increasingly competitive market."

**D.**      **The Unfair Price**

38.      The consideration offered to Harris Teeter's public shareholders in the Proposed

Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of

Harris Teeter's common stock is materially in excess of the amount offered for those securities

in the Proposed Transaction given the Company's prospects for future growth and earnings.

According to the Company's July 8th press release, the Proposed Transaction is a strategic

merger for Kroger providing approximately "$40-$50 million [of savings] over the next three to

four years." Despite these anticipated synergies inherent in the transaction for Kroger, the Board

failed to secure a price for the Company, either for the intrinsic value of its assets or the value of

the Company's assets to Kroger.

39.      Principally, the $49.38 per share price that Kroger proposes to pay to the

Company's shareholders is at least $0.62 below one analyst's price target for the Company's

stock. Specifically, Bloomberg, on July 9, 2013—one day following the announcement of the

Proposed Transaction—announced that Jason DeRise of UBS AG estimated Harris Teeter's price per share at $50.00.

E.    **Conflicts of Interests**

40.    Following the close of the Proposed Transaction, undisclosed members of the Company's key management team and the Board will join the surviving entity.  Therefore, by virtue of their anticipated positions with the surviving entity, the Board is incapable of rendering independent judgment regarding the Proposed Transaction.

41.    Also noteworthy, J.P. Morgan is the exclusive financial advisor to Harris Teeter. In 2012, JP Morgan Chase Bank, N.A. ("JP Morgan Chase") acted as a lender to Harris Teeter on of a revolving line of credit in the amount of $35,000,000.00.  Thus, J.P. Morgan has a substantial conflict of interest in ensuring the Proposed Transaction closes because following the close of the Proposed Transaction; Kroger intends to pay down an undisclosed amount of Harris Teeter's debt.

F.    **The Unreasonable Deal Protection Devices**

42.    On July 8, 2013, the Company filed a Form 8-K with the U.S. Securities and Exchange Commission ("SEC") wherein it disclosed the terms of its Merger Agreement.  To the detriment of Harris Teeter's shareholders, as part of the Merger Agreement, the Individual Defendants agreed to certain deal protection devices that operate conjunctively to lock-up the Proposed Transaction and ensure that no competing offers will emerge for the Company.

43.    First, the Merger Agreement contains a strict "non-solicitation" provision prohibiting the Company or the Individual Defendants from taking any affirmative action to comply with their fiduciary duties to maximize shareholder value.  Pointedly, the Merger Agreement at section 5.6(a)(i)(ii) requires that the Company and the Individual Defendants to "cease any existing solicitations, discussions or negotiations with any persons that may be

12

ongoing with respect to any Acquisition Proposals or any proposal reasonably likely to result in an Acquisition Proposal." Moreover, the Individual Defendants must not "initiate, solicit, or knowingly encourage, facilitate or assist the making of any proposal or offer that constitutes or may reasonably be expected to lead to, an Acquisition Proposal."

44. Similarly, section 5.6(c) of the Merger Agreement provides a "matching rights" provision pursuant to which the Company must promptly notify Kroger within forty-eight (48) hours should it receive an unsolicited competing acquisition proposal. The Company must notify Kroger of the bidder's identity and the terms of the bidder's offer. Thereafter, if the Board determines that the competing acquisition proposal constitutes a "Superior Proposal," section 5.6(c)(ii) requires the Board to grant Kroger five (5) calendar days to amend the terms of the Merger Agreement to make a counter-offer that the Company must consider in determining whether the competing bid still constitutes a "Superior Proposal."

45. The effect of these provisions is to prevent the Board from entering discussions or negotiations with other potential purchasers unless the Board can first determine that the competing acquisition proposal is, in fact, "superior," and even then, the Company must give Kroger five (5) calendar days to match the competing acquisition proposal. Consequently, this provision prevents the Individual Defendants from exercising their fiduciary duties and precludes an opportunity for a potential purchaser to emerge.

46. Additionally, the Merger Agreement provides that Harris Teeter must pay to Kroger a termination fee of $75 million in the event the Company decides to pursue the competing offer. This unreasonable termination fee will ensure that no competing offer will appear, as any competing bidder would essentially pay a naked premium for the right to provide the shareholders with a superior offer.

13

47.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Harris Teeter will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against the Individual Defendants
for Breach of Fiduciary Duties**

48.     Plaintiff repeats and realleges each allegation set forth herein.

49.     The Individual Defendants have violated fiduciary duties of care, loyalty and good faith owed to Harris Teeter's shareholders.

50.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Harris Teeter.

51.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of care, loyalty and good faith owed to Harris Teeter's shareholders because, among other reasons, they failed to take steps to secure and obtain the best price reasonable under the circumstances

52.     By reason of the foregoing acts, practices and courses of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

53.     As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Harris Teeter's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

54.     Unless the Court enjoins Defendants, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

55.     Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against Kroger and Merger Sub for Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duty**

56.     Plaintiff repeats and realleges each allegation set forth herein.

57.     Kroger and Merger Sub have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Harris Teeter's shareholders, and have participated in such breaches of fiduciary duties.

58.     Kroger and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, Kroger and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

A.     Declaring this action to be a Class Action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company

adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

C.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.     Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance for attorneys' and expert fees and expenses; and

F.     Granting Plaintiff and other members of the Class such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  August 9, 2013                                    Respectfully submitted,

                                                         **GRAY, LAYTON, KERSH, SOLOMON,**
                                                         **FURR & SMITH, P.A.**

                                                         By: _/s/ William E. Moore Jr._
                                                                 William E. Moore Jr.
                                                         State Bar of North Carolina No. 9962
                                                         516 South New Hope Road, P.O. Box 2636
                                                         Gastonia, North Carolina 28053-2636
                                                         Tel: 704-865-4400
                                                         Email: bmoore@gastonlegal.com
                                                         *Attorneys for Plaintiffs*

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
David M. Sborz
369 Lexington Ave., Tenth Floor
New York, NY 10017
Tel:  212-983-9330
Email: jmonteverde@faruqilaw.com
Email: dsborz@faruqilaw.com
*Attorneys for Plaintiff*