IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13CV453

| | | |
|---|---|---|
| JOEL KRIEGER, On behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| Vs. | ) ) | ORDER |
| HARRIS TEETER SUPERMARKETS, INC., JOHN R. BELK, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court upon Defendants' Motion to Stay this case pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) pending the resolution of three state court actions.

**FACTUAL BACKGROUND**

This action arises out of a proposed merger between Defendant Harris Teeter Supermarkets, Inc. ("Harris Teeter") and The Kroger Co. ("Kroger"). The merger agreement was announced on July 8, 2013. Soon thereafter, shareholders began filing class-action suits against Harris Teeter, the members of the Board of Directors ("the Individual Defendants"), Kroger, and Hornet Acquisition, Inc. ("Hornet"), the wholly owned subsidiary of Kroger that would be used to consummate the merger. The first suit, *Priscilla Gerlach v. Thomas W. Dickson, et al.*, Case No. 13-CVS-12579, was filed in Mecklenburg County Superior Court on July 16, 2013 (the "*Gerlach* Complaint"), followed shortly thereafter by two more suits in state court, *Westmoreland County Employees Retirement Fund v. John R. Belk, et al.*, Case No. 13-CVS-13852, filed on August 1 (the "*Westmoreland* Complaint"), and *Tabitha Hamrick v. Harris Teeter Supermarkets, Inc., et al.*, Case No. 13-CVS-14264, filed on August 12 (the "*Hamrick* Complaint"). Joel Krieger, the Plaintiff

1

herein, filed this suit on August 9, 2013, and on August 15 amended his complaint, adding claims under sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and dropping aiding and abetting claims against Kroger and Hornet.

All three state court cases have now been assigned to the North Carolina Business Court and have been consolidated. Moreover, the parties have commenced expedited discovery and a hearing is scheduled on September 30 on a motion for preliminary injunction to enjoin the proposed merger.

It appears that the state court complaints all share a similar factual basis as the Complaint herein and also seek similar relief, including injunctive relief prohibiting the proposed merger. However, the Krieger Complaint includes claims under sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and supplemental state-law claims based on fraud, negligent misrepresentation, and violations of Chapter 55 of the North Carolina General Statutes. [1]

**DISCUSSION**

Defendants move to stay this case in favor of the state court lawsuits pursuant to the doctrine of *Colorado River*. The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). In cases involving "contemporaneous exercise of concurrent jurisdictions" between state and federal courts, the *Colorado River* abstention doctrine governs. *Colo. River*, 424 U.S. at 817. Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," this obligation does not apply " in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest," such as "wise judicial administration,

---

[1] Krieger's federal securities claims and supplemental state-law claims are asserted only on behalf of himself, and not on behalf of the class.

2

giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 817, 813.

In determining whether abstention is appropriate under *Colorado River,* courts must engage in a two-step inquiry. First, the court must determine if the cases in federal and state court are parallel. *See Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005). Second, if the cases are parallel, a court must then apply a six-factor test for determining whether abstention is appropriate:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Id.* at 463–64 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15–16 (1983)).

The threshold inquiry that the court must make under *Colorado River* is whether the cases are parallel. Cases are parallel when they involve "substantially the same parties litigat[ing] substantially the same issues in different forums." *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). Thus, cases may be parallel despite not having identical parties or claims. *See Chase Brexton Health Servs., Inc.*, 411 F.3d at 464 (recognizing that "the parties and issues in *Colorado River* itself were not identical to the 'parallel' state-court proceeding").

It appears to the Court that these cases are clearly parallel. The primary litigants: the proposed class, Harris Teeter, and the Individual Defendants, are all parties in the federal and state court cases. Although the four named plaintiffs are different, they all claim to represent essentially
3

the same class of Harris Teeter shareholders, meaning that the plaintiffs in each case are the same. *See Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) ("[W]here such congruence of both interests and allegations exists in duplicate class actions, the nonidentity of the named class representatives should in no way undermine a court's determination that the suits in question are otherwise parallel."). Likewise, all four complaints name Harris Teeter and the Individual Defendants as defendants. The inclusion of Kroger and Hornet as defendants in the state court complaints "does not substantially change [the federal case's] similarity to a concurrent state case" because at its most basic level, this is a dispute between the proposed classes and Harris Teeter and its Board. *See Int'l Jenson, Inc. v. Emerson Radio Corp.*, No. 96 C 2816, 1996 WL 494273, at *2 (N.D. Ill. Aug. 27, 1996) (focusing on which parties were the critical parties in the case and giving little weight to the addition or subtraction of ancillary parties from the case). Accordingly, the parties here and in the state cases are substantially similar. *See In re Wal-Mart Stores, Inc. S'holder Derivative Litig.*, 4:12-CV-4041, 2012 WL 5935340, at *2 (W.D. Ark. Nov. 27, 2012) (finding that the parties were substantially similar in federal and state court cases when the parties were "largely the same").

Likewise, the claims in the present case are substantially the same as the claims in the state court cases because all of the claims are based on the same alleged wrongdoing. The factual basis for the claims in this case is the same as the basis for the claims in state court, as all of them arise from the Board's consideration of its merger options and its decision to merge with Kroger. The gravamen of the Krieger Complaint as well as the state court complaints is that the Individual Defendants failed to value the company properly, adopted improper deal protection devices, failed to disclose all material information to the shareholders about the proposed merger, and engaged in self-interested decisionmaking. Specifically, all of the claims in the Krieger Complaint are based on the Individual Defendants' alleged breaches of the duties of care and loyalty and failure to disclose material information to the shareholders about the transaction. The state court cases contain similar

4

allegations as the basis for their claims. Although Krieger's claims under sections 14(a) and 20(a) of the Securities Exchange Act of 1934 are not included the state court cases, these claims will require Krieger to prove the same misconduct that has been alleged as part of the breach of fiduciary duties claims. As for the section 14(a) claim, North Carolina, following Delaware law, treats the materiality requirement for whether nondisclosure of information is a breach of a fiduciary duty the same as the standard under federal law for materiality under section 14(a). *See Ehrenhaus v. Baker*, 717 S.E 2d. 9, 28–29 (N.C. Ct. App. 2011) (quoting *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976))). Thus, this claim will turn on the same factual allegations and legal standards as the breach of fiduciary duties claims. As for the section 20(a) claim, "[s]ection 20(a) makes every person 'who, directly or indirectly, controls any person' jointly and severally liable for violations of that Act." *Waterford Inv. Servs., Inc. v. Bosco*, 682 F.3d 348, 354 (4th Cir. 2012) (quoting 15 U.S.C. § 78t(a)). Here, Krieger's theory regarding his section 20(a) claim is that the Individual Defendants were in a position of control yet failed to exercise that control to ensure that the proxy statement met the legal requirements. Krieger's supplemental state law claims include the same factual allegations as his other three claims, but they are repackaged under other legal theories. *See Clark v. Lacy*, 376 F.3d 682, 686–87 (7th Cir. 2004) ("Just as the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action.").

In addition to having substantially the same parties and claims, the Krieger Complaint seeks relief that is substantially similar to the relief sought by the plaintiffs in the state cases. First, Krieger requests certification of his proposed class, which all the state court cases also seek. Second, Krieger seeks an injunction prohibiting the Defendants "from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders." ( Krieger Compl. Prayer for Relief B).

5

The state court cases seek similar injunctions. Third, Krieger seeks a rescission of the proposed transaction, to the extent that it has been implemented, or rescissory damages. Both the *Gerlach* Complaint and the *Westmoreland* Complaint seek that same relief. Fourth, Krieger asks the Court to direct the Defendants "to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants wrongdoing and/or awarding compensatory damages for all supplemental state law claims." (Krieger Compl. Prayer for Relief D ). As with the previous requested relief, both the *Gerlach* Complaint and the *Westmoreland* Complaint seek an accounting from the defendants for damages caused or profits obtained. Fifth, Krieger demands that the Defendants bear the costs of the action, including attorney's fees. The state court cases all seek this same relief. Based on this comparison of the complaints, Krieger seeks the same relief here that the plaintiffs are seeking in the state court cases. Fundamentally, this case and the cases in state court seek to enjoin the proposed merger. *See McCreary v. Celera Corp.*, 11-1618 SC, 2011 WL 1399263, at *3 (N.D. Cal. Apr. 13, 2011) ("The primary relief sought in both actions is also substantially the same: an injunction enjoining the proposed acquisition until the [the defendant] has complied with its fiduciary duties involving the transaction, and compensatory damages to class members."). But even beyond this most basic aim, Krieger seeks this relief in almost identical language in many instances to the state court plaintiffs. These cases therefore seek substantially similar relief.

One consideration that the Court must address is whether Plaintiff's claims under sections 14(a) and 20(a) of the Securities Exchange Act of 1934, which are subject to exclusive federal jurisdiction, preclude a finding that this case is parallel to the state court cases. While the Fourth Circuit has yet to address the impact of claims subject to exclusive federal jurisdiction on the *Colorado River* analysis, some courts have declined to abstain when a lawsuit includes a claim that is subject to exclusive federal jurisdiction. *See, e.g.*, *Riley v. Simmons*, 45 F.3d 764 (3d Cir. 1995); *Minucci v. Agrama*, 868 F.2d 1113, 1114-15 (9th Cir. 1989); *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 215 (7th Cir. 1988); *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 63

6

(2d Cir. 1986). The Court finds such an inflexible rule to be "impractical and contrary to notions of wise judicial administration." G*erbino v. Sprint Nextel Corp.,* 12-2722-CM, 2013 WL 2405558, at *5 D. Kan. May 31, 2013). For example, an inflexible rule may lead to forum shopping and the manipulation of litigation, which is conduct that the Supreme Court consistently has sought to discourage. *See, e.g.*, *Hanna v. Plumer*, 380 U.S. 460, 468 (1965) (observing that one of the "twin aims of the *Erie* rule" is the "discouragement of forum-shopping"). Such a rule means that "plaintiffs could effectively manipulate defendants into defending substantively identical cases in multiple forums." G*erbino*, 2013 WL 2405558, at *5. Moreover, such an inflexible rule "is neither efficient nor economical. Rather, it promotes duplication of proceedings and a waste of judicial resources." *Id.* The Court finds such cases to be unpersuasive because they fail to consider these problems attendant to multijurisdictional litigation.

Many other courts have held that cases subject to exclusive federal jurisdiction are parallel with state court cases when the securities claims are "in essence, duplicative of the breach of fiduciary duty claims." *In re Wal-Mart Stores, Inc. S'holder Derivative Litig.*, 2012 WL 5935340, at *3; *see also Calleros v. FSI Int'l, Inc.*, 892 F. Supp. 2d 1163, 1168 (D. Minn. 2012) (holding that substantial similarity between claims existed when "[t]he factual basis for the claims in the state cases and the claims asserted [in the federal case] is the same, essentially charging [the defendants] with failing to make adequate disclosure to shareholders in connection with the tender offer"). Unlike the cases adhering to an inflexible rule, these courts take a practical view of the claims in federal and state court to determine if plaintiffs are merely "attempting to litigate what is essentially the same claim under two different laws in two different systems." *Int'l Jenson, Inc.*, 1996 WL 494273, at *4; *see also* G*erbino*, 2013 WL 2405558, at *5 (reasoning that the claims in both courts focused on whether the defendants failed to disclose material information). The Court finds that these cases are more persuasive and better serve the purpose of the *Colorado River* doctrine.

As discussed above, the federal claims involve the same misconduct that has been alleged as part of the breach of fiduciary duties claims. Accordingly, the Court finds that the federal and state court actions are parallel.

Because the cases in federal and state court are parallel, the Court must next analyze whether a stay under *Colorado River* is appropriate. The Fourth Circuit has identified six factors district courts should consider in determining whether to stay a case under *Colorado River*:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Chase Brexton Health Servs., Inc.*, 411 F.3d at 463–64 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 15–16).

It appears that the first factor is inapplicable because no property is involved over which any court may have jurisdiction. The second factor, which considers whether one forum is more convenient than another for the parties, witnesses, and evidence, appears to be neutral. Both courts are in Charlotte, so neither is more or less convenient than the other. *See, e.g.*, G*erbino*, 2013 WL 2405558, at *7 (treating this factor as neutral because both the federal and state cases were being heard in the same city).

The most significant factor here is the third factor, which heavily favors staying this case. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett Co., Inc. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 744 (4th Cir. 2002) (quoting *Am. Int'l Underwriters, Inc. v. Continental Ins. Co.,* 843 F.2d 1253, 1258 (9th Cir. 1988)). "[F]or abstention to be appropriate, retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill suited for resolution in duplicate forums." *Id.* Here, the

possibility of inefficiencies and inconsistent results is well beyond the inevitable tension between federal and state judicial systems: the particularly pressing problems here are time and the very real possibility of conflicting court orders. This factor therefore strongly favors litigating this case in one forum.

The fourth considers which court first obtained jurisdiction and the progress made in the case in each court. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21. Here, two of the three state court cases were filed before the Krieger Complaint and the third was filed before Krieger amended his complaint here. Furthermore, the state court consolidated the three pending state cases on August 29, 2013 and all defendants have now moved to dismiss the plaintiffs' complaint. Discovery has begun and a case management conference was conducted on September 11. Moreover, a hearing has been set for September 30 on a motion for preliminary injunction. The consolidated state court action has therefore progressed much farther than the federal case. This factor weighs heavily in favor of staying this action.

Likewise, the sixth factor favors a stay because the North Carolina Business Court can adequately protect Krieger's rights. The state court can grant Krieger substantially the same relief he is seeking from this Court, and can move quickly to resolve these claims. Krieger is a member of the proposed classes in the state court cases, so his rights are protected in that way. *See* G*erbino*, 2013 WL 2405558, at *9 ("Notably, plaintiff is a member of the putative class in the Consolidated State Action. He will, therefore, have his rights protected in that action."). Although the state court cannot grant relief specifically for the federal securities claims, the state court can grant relief that gives Krieger the exact result that he seeks. To the extent that Krieger can obtain any relief based on the federal claims that the state court cannot award, this Court would still have jurisdiction to hear those claims and grant that relief after the state court action is resolved.

The fifth factor—whether state law or federal law provides the rule of decision on the merits—does not counsel against a stay. Although both the federal and state court have jurisdiction

9

over the state-law claims, North Carolina law provides the rule of decision for the breach of fiduciary duties claims. Based on the expertise of the North Carolina Business Court, that court is well equipped to address the state-law issues. Federal law does apply to the claims under sections 14(a) and 20(a). However, deferring a decision on these claims now will not prejudice Krieger. Based on the factual similarities underlying all of these claims, a decision by the state court can provide to the plaintiffs all of the relief sought by Krieger for the federal securities law violations. Also, rulings by the state court may have preclusive effect on the federal claims, meaning that no federal law will need to be applied, and the state-law issues will have been resolved by an able state court with expertise in this area. *See* G*erbino*, 2013 WL 2405558, at *9; *In re Novell, Inc. S'holder Litig.*, 2012 WL 458500, at *7.

Weighing all of the above factors warrants staying this case pending the outcome of the state court actions. The need for resolving this case in a timely manner and avoiding conflicting court orders strongly favors litigating these issues in a single forum, and given the speed with which the state court can handle the cases, the ability of the state court to protect the rights of all the plaintiffs, and the relative importance of state law in resolving this dispute, the North Carolina Business Court is well-equipped to handle these cases. In short, this is precisely the type of case that involves the "exceptional circumstances" contemplated by *Colorado River*. Accordingly,

IT IS THEREFORE ORDERED that Defendants' Motion to Stay is hereby GRANTED, and this case is stayed pending the outcome of the state court actions;

IT IS FURTHER ORDERED that Plaintiff's Motion for Expedited Discovery is DENIED as moot.

Signed: September 18, 2013

Graham C. Mullen
United States District Judge